**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

**BRIAN B.,**

        **Plaintiff,**

    v.                             **Civil Action 3:25-cv-187**
                                      **Magistrate Judge Kimberly A. Jolson**

**COMMISSIONER OF**
**SOCIAL SECURITY,**

        **Defendant.**

**OPINION AND ORDER**

Plaintiff, Brian B., brings this action under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). For the reasons set forth below, the Court **OVERRULES** Plaintiff's Statement of Errors (Doc. 12) and **AFFIRMS** the Commissioner's decision.

## I.     BACKGROUND

Plaintiff protectively filed applications for DIB and SSI on June 27, 2022. (R. at 217–23, 224–29). After Plaintiff's applications were denied initially and upon reconsideration, he received a hearing before Administrative Law Judge ("ALJ") Nicholas J. Schwalbach on April 17, 2024. (R. at 42–70). The ALJ denied benefits in a written decision on May 9, 2024. (R. at 12–41). Plaintiff filed the instant case seeking a review of the Commissioner's decision on June 6, 2025 (Doc. 1), and the Commissioner filed the administrative record on August 7, 2025 (Doc. 7). The matter has been briefed and is ripe for consideration. (Docs. 12, 13).

### A. Relevant Statements to the Agency and Hearing Testimony

The ALJ summarized Plaintiff's statements to the agency and the testimony from the

administrative hearing as follows:

> When [Plaintiff] filed for disability, he alleged irritable bowel syndrome, hallucinations, problems walking due to a steel plate in the ankle, mobility issues, and low vision (Ex. 2E/2). In a subsequent report, [Plaintiff] indicated that he has severe anxiety, severe pain form not being able to hold his bowels, and breathing pain, which have worsened since July 2022. He also 'cant [sic] stand more than 1/2 [sic]" (Ex. 7E).

> At the hearing on April 17, 2024, [Plaintiff] testified that he has been living with his mother for about eight or nine years. He is five feet nine inches tall and weighs 110 pounds. The most he has weighed since 2019 has been about 120 pounds and the least he has weighed is around 100 pounds. He has been disabled since June 2019 because he broke his right ankle twice. He can stand for about 10 to 15 minutes. He has not been able to get any ongoing treatment for his foot/ankle. His anxiety and depression affect his ability to work because it takes him awhile to get used to something. He is currently drinking on and off. He drinks three or four days week, consuming a total of about a 12-pack or 24-pack a week. On a typical day, he gets up and tries to do what he can around the house. Sometimes he goes to the grocery store. Doctors have not done anything to help him maintain a higher weight. He has complications due to his low baseline weight. He is not able to get up and get around. If he walks outside, he will take one crutch with him and use it as a cane.

(R. at 24).

### B. Relevant Medical Evidence

The ALJ summarized the medical records as to Plaintiff's impairments as follows:

> *** [Plaintiff] underwent an open reduction internal fixation of the right ankle in January 2021 (Ex. 1F/79-80). However, [Plaintiff] has had limited follow up treatment since then. He has had routine and conservative treatment for his osteopenia with fractures as well as irritable bowel syndrome and low vision. He was hospitalized for alcohol intoxication in August 2019 (Ex. 1F/197-202) and was transferred from a detox center to a hospital in August 2022 for alcohol-related seizure activity in August 2022 (Ex. 3F/4-7). He has otherwise had generally benign mental health examinations.

> On August 24, 2019, he was admitted for acute treatment on the inpatient behavioral health unit. He was placed on behavioral health unit routine observation and care. Patient was enrolled in individual, group and milieu therapies. At time of discharge on August 28, 2019, his mental status had improved. He denied suicidal ideation, homicidal ideation, auditory hallucinations, and visual hallucinations. He was amenable to outpatient follow up for treatment of alcohol use disorder. Naltrexone was started during the hospitalization and he tolerated it without

reporting any side effects. He was encouraged to abstain from alcohol, continue Naltrexone 50 mg daily and discuss Vivitrol with his outpatient provider. He was also continued on Hydroxyzine Pamoate (Vistaril) 25 mg one to two capsules four times daily as needed for anxiety (Ex. 1F/197-202).

On September 6, 2019, he presented to the emergency department with depression thoughts after losing his job at McDonald's. He had been consuming some alcohol and was brought in by the police. However, he stated that he is not homicidal or suicidal. The only abnormal finding on exam was a flat affect. His alcohol level was 409. The behavioral health crisis team evaluated [Plaintiff] and determined that he does not require inpatient admission at this time and he can be discharged from the emergency department when he is sober. He was diagnosed with depression and acute alcoholic intoxication without complication (Ex. 1F/123-126).

He saw his primary care provider in December 2019 and reported that he takes Vistaril as needed for anxiety, which has been helpful. He has not been on any other medications in the past. He used to see a psychiatrist but stopped due to not having transportation. He denied any current suicidal/homicidal ideation or any auditory/visual hallucinations. He had a normal psychiatric exam. Different medication options were discussed; he decided to choose Wellbutrin to also help with smoking cessation. He was started on Bupropion (Wellbutrin XL) 150 mg and was given a refill of Vistaril 50 mg (Ex. 1F/118-121). His symptoms were much better after starting Wellbutrin and he felt very well in January 2020. His mother reported that he has been drinking a lot. He had tried Antabuse in the past but that did not work. When asked to rate his readiness to quit on a scale of one to ten with ten being ready to quit completely, he said it was a six out of ten. He had cut back to drinking three 24-ounce tall boys daily from much more. Primary care discussed with [Plaintiff] medication options versus counseling for alcoholism but [Plaintiff] was quite hesitant. He was trying to cut back and would continue to do so (Ex. 1F/113- 117).

\*\*\*

 Since the date last insured, Wellbutrin was switched to Zoloft 50 mg given his alcoholism and treatment with Librium as well as concern for lowering of seizure threshold when on Wellbutrin (Ex. 1F/111). Wellbutrin was safe to restart soon thereafter with Zoloft and as-needed Hydroxyzine (Ex. 1F/106). He has been doing well on Wellbutrin and Zoloft at current dosages and has not had to take any of his as-needed Hydroxyzine (Ex. 1F/66). He was drinking significant amounts of alcohol in 2021 and was not amenable to going to rehabilitation center (Ex. 2F/32-34, 45-47, 59-60, 66-67).

He presented to the emergency department in December 2020 with a right ankle injury and was found to have a nondisplaced oblique fracture of the lateral malleolus with overlying soft tissue swelling. He was placed in a stirrup splint and was given crutches. He was noted as having some difficulties with crutches so he was offered a walker but declined it (Ex. 1F/82-86). He saw orthopedic surgery

3

who placed him in an AO splint and scheduled him for surgery as soon as possible (Ex. 1F/80-81). On January 8, 2021, he underwent an open reduction internal fixation right distal fibula (Ex. 1F/79-80). His pain was well controlled in February 2021 (Ex. 1F/64). In early March 2021, he was starting to walk around the house without wearing the boot (Ex. 1F/62).

A CT scan of the right foot dated April 1, 2021, showed diffuse osteopenia as well as a comminuted impacted fracture base and proximal diaphysis of the first metatarsal with mild progressive healing. There was a slight blunted truncated appearance of the lateral tibial plafond small adjacent bone fragment questionable for a fracture (Ex. 1F/304-305). He had been weightbearing as tolerated in a normal shoe or sandal in May 2021. He was referred to physical therapy for proprioception and strengthening (Ex. 1F/55-57).

He requested bone density testing in June 2021 after being told his bones are very brittle and with a very low BMI. A bone density screen was ordered (Ex. 1F/48-53). The bone density scan showed osteoporosis (Ex. 1F/293-295).

In July 2021, he was taking Hydroxyzine as needed but he was not taking Wellbutrin or Zoloft regularly due to not feeling his anxiety and depression are bad so he wanted to remove them off his medication list. He was taking Fosamax for osteopenia as well as folic acid and thiamine for alcoholism. He was started on Remeron 15 mg due to weight loss and anxiety (Ex. 1F/32-37).

He went to an initial physical therapy evaluation for his right ankle in July 2021. Physical therapy once a week for ten weeks was recommended (Ex. 1F/37-42). However, he made no further contact to continue with physical therapy after cancelling and not attending previously scheduled appointments. Thus, he was discharged from physical therapy (Ex. 1F/31).

In September 2021, he complained of paresthesias and numbness-like sensations in the right foot as well as some stiffness in ankle dorsiflexion/plantarflexion. He noted a decreased ability to walk long distances. However, his ankle mortis was only mildly swollen on exam without tenderness to palpation. His motor function was intact in the EHL/FHL as well as dorsiflexion/plantarflexion. An x-ray of the right foot showed a healing nondisplaced subacute fracture involving the base of the first metatarsal bone. He was referred to physical therapy (Ex. 1F/29-30, 288). He returned to physical therapy in November 2021 for an evaluation (Ex. 1F/24-28). He actually attended some therapy sessions but only three after the initial evaluation. He cancelled five appointments and did not show to one scheduled appointment. He was subsequently discharged from physical therapy (Ex. 1F/18-19).

In July 2022, he presented to primary care for an annual exam. He had his mother were worried about him having falls with his osteoporosis. He was having trouble with walking more than two blocks and he had fallen three to four times He was

still having pain in the right ankle despite going to physical therapy. He noted some incontinence issues and he was having a lot of diarrhea. He wanted a referral for Reclast to treat osteoporosis as he could not tolerate Fosamax due to gastrointestinal upset. They also discussed a pain management referral for his chronic pain but he was not actually given a referral to pain management; instead he was prescribed Voltaren topical gel. He was referred for IV therapy Reclast. He was also prescribed Bentyl 10 mg and a probiotic for chronic diarrhea (Ex. 1F/10-16).

At a gastroenterology visit in July 2022, he reported normally having two to three bowel movements a day but sometimes he will get bowel movements with urgency, which he cannot control. He has not been going out because he loses control of his bowels. He was still drinking at least two beers a day, which could also contribute to diarrhea. He was again advised to cut down to one beer a day and then stop it due to alcoholic hepatitis. He was placed on a trial of Metronidazole 500 mg twice daily for ten days and Imodium as needed especially when he is going out (Ex. 2F/19-21).

On the evening of August 13, 2022, he presented to the emergency department with questionable seizure activity and head injury. Per EMS, he was at a rehab center where he was inpatient at the rehab center for eight days for detox for alcohol and then in a day home where he was walking around leaning against a couch and then fell, hit his head, and had seizure-like activity. He was transferred from alcohol rehab at Midwest Detox Center to St. Luke's Hospital. He was switched from Tegretol to Dilantin, and he had no seizures during his hospital stay. An MRI of the brain showed atrophy, most likely secondary to his chronic alcohol abuse. He was informed that he is 34 years old but theoretically has an MRI of the brain of an 80-year-old. He verbalized understanding about the importance of not drinking alcohol at all. He was discharged on August 19, 2022, back to rehab (Ex. 3F/4-7, 50-55, 67-69).

He followed up with primary care in September 2022 and reported being sober for one month. He was prescribed Melatonin and Trazodone while hospitalized; he needed refills on those medications. He was still taking Phenytoin for his seizures and needed to follow up with neurology. He also needed a referral to orthopedic surgery for follow up of the pelvic rami fractures. He still has right ankle pain despite going to physical therapy. He noted trouble with walking more than two blocks. He was noted as having been sent a referral for Reclast to treat osteoporosis but he did not go because he had trouble with transportation. His diarrhea was better and he no longer needed to use Bentyl. On physical examination, he had pain in the right lower extremity and pelvic pain with an antalgic gait, but was still able to walk. He was given refills of Dilantin 100 mg, Melatonin 5 mg, and Trazodone 100 mg referred to orthopedic surgery and neurology. and labs were ordered to evaluate for seizures (Ex. 7F/25-31).

In November 2022, he presented to Dayton Eye Associates for evaluation of blurry vision in the bilateral eyes that started about six months ago. He described the

5

symptoms as constant and significant. He has to get close to the TV to read captions. He does not drive but he has a hard time making out traffic signs from a distance and telling the difference between the colors of street lights. He requested an updated glasses prescription. On exam, his corrected distance visual acuity was 20/50+2 in the right eye and 20/40-2 in the left eye. He had a normal exam of the eyes with no ocular pathology. His vision would be monitored. He was advised to follow up with Dr. Wiles because he would benefit from new glasses (Ex. 5F).

He presented to a consultative physical examination in December 2022 and complained of occasional pain if he stands for more than 15 minutes or walks for more than two blocks. He sustained a fracture of the right ankle two years ago and had an open reduction internal fixation with a steel plate in place. He feels that he cannot move his toes or that they are not as strong as the other side. He has poor vision and wears glasses. He complained of abdominal cramp with a history of irritable bowel syndrome. He has three to four bowel movements daily and has urgency when he has to go. He is on medication but he does not think the medication helps. His distant vision was 20/200 in the left eye, right eye, and both eyes. His near vision was 20/200 in the left eye, 20/200 in the right eye, and 20/100 in both eyes (Ex. 6F).

In January 2023, he complained of pain in the back left ribs and trouble walking due to right hip pain. He was still taking Phenytoin (Dilantin) for his seizures and has had no recurrence of seizures. He still needed to follow up with neurology for the seizures and with orthopedic surgery for the pelvic rami fractures. The three neurology referrals and one orthopedic surgery referral did not go through due to insurance reasons. He was advised to find out which neurologist and orthopedic surgeon was in network and to let primary care know so that they could send a referral for him. X-rays of the right hip and left ribs were ordered (Ex. 7F/15-22).

He had an acute visit for right ankle skin discoloration on May 30, 2023. The discoloration did not appear to be clinically significant but a right ankle x-ray was nevertheless ordered (Ex. 7F/12-15). The x-ray showed an uncomplicated appearance of postsurgical changes related to open reduction internal fixation (ORIF) of a fracture involving the lateral malleolus (Ex. 7F/40). A bone density scan in early August 2023 was below the expected range for his age (Ex. 9F/20-21). He followed up with primary care later that month for a home health referral. He wanted a new referral to orthopedic surgery. He was still taking folic acid and thiamine for alcoholism. He was started on Amitriptyline (Elavil) 25 mg for sleep. He was referred to home health and orthopedic surgery per his request (Ex. 9F/10-16).

In November 2023, he complained of right ankle pain. Primary care offered an orthopedic referral but [Plaintiff] declined the referral as well as pain medicines. He was still taking folic acid and thiamine for alcoholism. He had been referred to rheumatology for osteoporosis but never went. Thus, he was merely given a new Reclast infusion referral (Ex. 13F/34-40). He noted worsening anxiety in mid-

6

December 2023 but he did not want any adjustment on his medications. He also reported that he no longer wants to be on Phenytoin as he had self-discontinued Phenytoin without any recurrence of seizures. He was still taking folic acid and thiamine and was drinking two beers daily. He was continued on Mirtazapine and probiotics for diarrhea as he was not having any side effects (Ex. 13F/26-32). A week and a half later, he complained of abdominal pain in the morning with nausea, diarrhea one to two times a week, and occasional stool incontinence. He was having some right ankle pain here and there but overall he was doing okay with the pain at this time. He had not been able to go to get Reclast due to transportation issues. Labs and an x-ray of the abdomen were ordered to evaluate his left upper quadrant abdominal pain and irritable bowel syndrome with diarrhea (Ex. 13F/17-23).

In February 2024, he presented to his primary care provider for disability forms to be filled out. He reported trouble holding balance for his irritable bowel syndrome, multiple fractures, and pain. He had a lot of chronic pain from the fractures and was unable to sit or stand for prolonged periods of time. He also noted trouble reaching and chronic diarrhea. Primary care completed the disability forms but did not give any new referrals or make changes to [Plaintiff]'s medication regimen (Ex. 13F/10-16).

(R. at 25–29).

### C.      The ALJ's Decision

The ALJ found that Plaintiff meets the insured status requirements through March 31, 2020, and has not engaged in substantial gainful activity since June 1, 2019, his alleged onset date of disability.  (R. at 17).  The ALJ determined that Plaintiff suffered from the severe impairments of residual of a right ankle fracture and surgical repair; irritable bowel syndrome ("IBS"); osteoporosis with fractures; low vision; anxiety disorder; major depressive disorder; alcoholism; anorexia.  (*Id.*).  The ALJ, however, found that none of Plaintiff's impairments, either singly or in combination, meets or medically equal a listed impairment.  (R. at 19).

As to Plaintiff's residual functional capacity ("RFC"), the ALJ opined:

After careful consideration of the entire record the [ALJ] finds that [Plaintiff] has the residual functional capacity to perform light work, as defined in 20 CFR 404.1567(b) and 416.967(b), except that he: can frequently balance (as defined by the Selected Characteristics of Occupations), operate foot controls with the right lower extremity; can occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl; can never climb ladders, ropes, and scaffolds; would need to avoid all

7

exposure to moving mechanical parts of equipment, tools, or machinery, unprotected heights, and commercial driving; can have occasional superficial contact with coworkers and supervisors but no teamwork or tandem tasks; "superficial contact" is defined as retaining the ability to receive simple instructions, ask simple questions, and receive performance appraisals but as lacking the ability to engage in more complex social interactions such as persuading other people or rendering advice; should have no contact with the public as part of job duties; can tolerate occasional changes in an otherwise routine work setting explained in advance to allow time for adjustment to new expectations; should have no ready access to alcohol; and would need indoor work only with ready access to a restroom but would be off-task less than 10 percent of the workday.

(R. at 23).

Upon "careful consideration of the evidence," the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ." (R. at 25).

Relying on the vocational expert ("VE")'s testimony, the ALJ concluded that Plaintiff is capable of performing his past relevant work as a material handler. (R. at 34). In addition to past relevant work, the ALJ determined that there are other jobs that exist in significant numbers in the national economy that Plaintiff can also perform, such as a housekeeper cleaner, folder or packager at the light exertional level. (R. at 34–35). The VE also testified to jobs that Plaintiff can perform considering his age, education, work experience, and residual functional capacity, at the sedentary exertional level, such as an inspector, sorter or document preparer. (R. at 35–36). He therefore concluded that Plaintiff has not been disabled since June 1, 2019. (R. at 36).

## II.     STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a

preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

## III. DISCUSSION

Plaintiff makes three contentions of error. He begins by arguing that the ALJ erred at Step Three of the sequential analysis by failing to consider whether his anorexia and weight meets or medically equals Listing 5.08. (Doc. 12 at 10–11). He continues, positing that the ALJ's finding at Steps Four and Five were not supported by substantial evidence. (*Id.* at 11–15). And he concludes by asserting that the ALJ improperly evaluated the opinion of his treatment provider, Huong-Thao Thy Tran, M.D. for supportability and consistency. (*Id.* at 16–18). The Court finds all three arguments unavailing.

### A. The ALJ's Step Three Finding

Plaintiff's first contention of error claims that the ALJ erred at Step Three of the sequential analysis by failing to consider whether his weight loss meets or medically equals Listing 5.08. (Doc. 12 at 10). Specifically, Plaintiff argues that evidence in the record demonstrates his chronic diarrhea caused his weight loss, and the ALJ erred in failing to specifically analyze the Listing and

relevant medical evidence in denying his application.  (*Id.*).  The Court disagrees.

At Step Three, the ALJ must compare a claimant's impairments to an enumerated list of medical conditions that the Social Security Administration has deemed "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience."  20 C.F.R. § 404.1525(a).  Each Listing describes "the objective medical and other findings needed to satisfy the criteria of that listing."  20 C.F.R. § 404.1525(c)(3).  A claimant will be found disabled if her impairments meet or equal a Listing in the Listing of Impairments.  20 C.F.R. § 404.1520(a)(4)(iii); *Turner v. Comm'r of Soc. Sec.*, 381 F. App'x 488, 491 (6th Cir. 2010).  Plaintiff bears the burden of showing that his impairment meets or medically equals a Listing.  *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).  A claimant must satisfy all of the criteria to "meet" the Listing.  20 C.F.R. § 404.1525(c)(3)*; Rabbers*, 582 F.3d at 653.

In order to meet the requirements of Listing 5.08, Plaintiff must show:

> Weight loss due to any digestive disorder (see 5.00F), despite adherence to prescribed treatment, with BMI of less than 17.50 calculated on at least two evaluations at least 60 days apart within a consecutive 12-month period.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 5.08.

The ALJ properly found Plaintiff did not meet Listing 5.08 by noting Plaintiff does not meet all of the above requirements.

To start, the ALJ determined that Plaintiff did not meet his burden of proving the first element of Listing 5.08.  A claimant meets the requirements of Listing 5.08 if he shows a digestive order caused his weight loss.  Put differently, the ALJ correctly cited that Listing 5.08 does not apply to weight loss resulting from a condition other than a digestive order.  (R. at 20 (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 5.08)).  Applying this rule, the ALJ cited to specific medical records that demonstrated Plaintiff's providers thought his alcoholism caused his weight loss.  (*Id.*

(citing, *e.g.*, R. at 342, 369, 386–87)).  Indeed, the record contains no medical opinion stating that Plaintiff's weight loss was attributable to his diarrhea as Plaintiff suggests.  Tellingly, Plaintiff does not cite any such opinion.  Thus, the ALJ was well within his authority to find that Plaintiff's weight loss was not caused by any digestive disorder, and that Listing 5.08 is therefore inapplicable.  *Welton v. Comm'r of Soc. Sec. Admin.*, No. 5:11CV104, 2012 WL 43052, at *11 (N.D. Ohio Jan. 9, 2012) (holding the ALJ reasonably found plaintiff's digestive disorder did not meet Listing 5.08 where plaintiff failed to show her weight loss resulted from the disorder).

Next, the ALJ analyzed whether Plaintiff's BMI stayed below 17.50 in the span of 60 days during a 12-month period.  (R. at 20).  The ALJ noted Plaintiff had a BMI of 16.73 on December 12, 2019, and a BMI of 16.57 on January 23, 2020.  (*Id.* (citing R. at 451, 808)).  The ALJ correctly found that these evaluations were not 60 days apart.  (*Id.*).  Then, the ALJ pointed to Plaintiff's next BMI in August 2019, which was 18.65 and thus above Listing level.  (*Id.* (citing R. at 525)).  By May 13, 2020, Plaintiff's BMI was 16.42, but the evaluation happened over a month after Plaintiff's last-insured date.  (*Id.* (citing R. at 803)).  The ALJ then found Plaintiff's BMI was consistently below 17.50 since June 27, 2022, Plaintiff's protective filing date.  (R. at 21 (citing, *e.g.*, R. at 343 (BMI at 15.52 on July 8, 2022), 987 (BMI at 16 by August 14, 2022), 1500 (BMI at 15.93 by May 30, 2023))).

Although Plaintiff arguably met the second criterion, the ALJ explained that Plaintiff lacked the third requirement: adherence to prescribed treatment.  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 5.08.  Specifically, the ALJ cited Plaintiff's testimony that he was not receiving treatment for his IBS (R. at 21 (citing R. at 54)).  He also cited a July 2022 report that Plaintiff was not taking his medicine for his gastrointestinal reflux disorder.  (R. at 21 (citing R. at 343–44)).

At best, Plaintiff meets one out of the three criteria.  Because he has failed to show that his

11

weight loss was caused by a digestive disorder, and because he failed to demonstrate compliance with prescribed treatment, the ALJ properly found that Listing 5.08 was inapplicable. *Rabbers*, 582 F.3d at 653.

That said, Plaintiff reiterates that he meets the criteria for Listing 5.08 because he maintained a BMI lower than 17.50 for the required period. (Doc. 12 at 10–11). While this may be true, this is the only criterion that Plaintiff has met. As previously mentioned, Plaintiff must show he satisfies all three requirements to meet the Listing. 20 C.F.R. § 404.1525(c)(3); *Rabbers*, 582 F.3d at 653. Since Plaintiff failed to prove criteria one and three, his argument about criterion two does nothing to change the Court's conclusion.

Plaintiff makes one more argument that is similarly unavailing. He claims that the ALJ erred in declining to apply Listing 5.08 because he failed to fully develop the record by not considering that Plaintiff's weight loss was caused by his diarrhea related to his IBS. (Doc. 12 at 11). The ALJ has an obligation to develop the record, but this does not mean that an ALJ must probe into all possible alternatives to his well-supported conclusions. *See Paige v. Comm'r of Soc. Sec. Admin.*, No. 1:20CV1249, 2021 WL 2952811, at *6 (N.D. Ohio July 14, 2021) ("ALJs are not required to exhaust every possible line of inquiry in an attempt to pursue every potential line of questioning.") (internal citations and quotations omitted). More importantly, the duty to develop the record "does not permit a claimant, through counsel, to rest on the record and later fault the ALJ for not performing a more exhaustive investigation." *Campbell v. Comm'r of Soc. Sec.*, No. 1:12CV1406, 2013 WL 1908145, at *8 (N.D. Ohio May 7, 2013) ("At the hearing, counsel did not indicate or suggest to the ALJ that any medical records were missing from the administrative record, nor did counsel ask for the ALJ's assistance in obtaining any additional medical records.").

12

Such is the case here, where Plaintiff provided no documents in the record and gave no testimony to indicate his IBS-related diarrhea caused his weight loss.  At best, Plaintiff testified—on questioning by his own attorney—that his weight is often low because he won't eat when "my stomach doesn't feel like it."  (R. at 61; *see also* R. at 62 (testifying that his lactose intolerance prevents him from getting enough protein)).  Counsel had the opportunity to develop this line of questioning and connect it to Plaintiff's IBS and diarrhea, or to suggest the record was incomplete in this regard.  But he did not.

The Court finds no error.

**B.      RFC determination and Ability to Perform Past Relevant Work and Light Exertional Work**

Plaintiff's second allegation of error takes aim at the ALJ's finding that Plaintiff could perform his past relevant work at a light level exertion, or any other work on a full time and sustained basis.  (Doc. 12 at 11–15).  The Court disagrees.

A plaintiff's RFC "is defined as the most a [plaintiff] can still do despite the physical and mental limitations resulting from [his] impairments." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009); *see also* 20 C.F.R. §§ 404.1545(a), 416.945(a).  When determining the RFC, the ALJ must evaluate several factors, including medical evidence, medical opinions, and the plaintiff's testimony. *Henderson v. Comm'r of Soc. Sec.*, No. 1:08-cv-2080, 2010 WL 750222, at *2 (N.D. Ohio Mar. 2, 2010) (citing *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004)).  In doing so, the ALJ must resolve conflicts in the record. *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984).  To that end, an ALJ "is only required to include in the residual functional capacity those limitations he finds credible and supported by the record." *Beckham v. Comm'r of Soc. Sec.*, No. 1:19-cv-576, 2020 WL 5035451, at *7 (S.D. Ohio Aug. 26, 2020) (quoting *Lipanye v. Comm'r of Soc. Sec.*, 802 F. App'x 165, 170 (6th Cir. 2020)).  Again, this Court must affirm the

13

ALJ's decision if it is supported by substantial evidence. *See Christine G. v. Comm'r of Soc. Sec.*, No. 2:22-cv-1969, 2023 WL 5717417, at *6 (S.D. Ohio Sept. 5, 2023) (stating that the court must affirm if substantial evidence supports the ALJ's decision, even if the court would have resolved conflicts in the record differently).

The ALJ crafted Plaintiff's RFC as follows:

> [Plaintiff] has the residual functional capacity to perform light work, as defined in 20 CFR 404.1567(b) and 416.967(b), except that he: can frequently balance (as defined by the Selected Characteristics of Occupations), operate foot controls with the right lower extremity; can occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl; can never climb ladders, ropes, and scaffolds; would need to avoid all exposure to moving mechanical parts of equipment, tools, or machinery, unprotected heights, and commercial driving; can have occasional superficial contact with coworkers and supervisors but no teamwork or tandem tasks; "superficial contact" is defined as retaining the ability to receive simple instructions, ask simple questions, and receive performance appraisals but as lacking the ability to engage in more complex social interactions such as persuading other people or rendering advice; should have no contact with the public as part of job duties; can tolerate occasional changes in an otherwise routine work setting explained in advance to allow time for adjustment to new expectations; should have no ready access to alcohol; and would need indoor work only with ready access to a restroom but would be off-task less than 10 percent of the workday.

(R. at 23).

In Step Four of the ALJ's sequential analysis, the ALJ found that this RFC did not prohibit Plaintiff from performing past relevant work as a Material Handler, (R. at 34). Nor did the RFC prohibit Plaintiff from working other jobs in the national economy in Step Five, including "semi-skilled, heavy work actually performed at the light level, SVP 3 actually performed at the unskilled, SVP 2 level." (*Id.*). Plaintiff alleges that the ALJ did not support these findings with substantial evidence. The Court considers each argument in turn.

### 1. Step Four

Step Four requires the ALJ to determine whether Plaintiff has the RFC to perform the requirements of his past relevant work. 20 C.F.R. §§ 404.1520(e) and 416.920(e). The ALJ must

14

make the following findings at this stage: "(1) a finding of fact as to the individual's RFC; (2) a finding of fact as to the physical and mental demands of the past job; and (3) a finding of fact that the individual's RFC permits a return to that past job."  SSR 82–62, 1982 WL 31386, *2 (1982).[1] Generally, the ALJ's Step Four determination "can be supported by the finding that Plaintiff can perform his past relevant work as 'actually performed,' or, 'as generally required by employers throughout the national economy.'"  *Robinson v. Comm'r of Soc. Sec.*, 426 F. Supp. 3d 411, 424 (E.D. Mich. 2019) (citing SSR 82–61, 1982 WL 31387, *2 (1982)).  A claimant bears the burden of proving "the existence and severity of limitations caused by [the] impairments and the fact that [he] is precluded from performing h[is] past relevant work" either as previously performed or as generally required in the national economy.  *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).  Upon review of the record, the ALJ sufficiently followed each sub-step at Step Four and supported his reasoning with substantial evidence.

To start, the ALJ limited Plaintiff to light work.  (R. at 23).  The ALJ found that Plaintiff's testimony about needing crutches was unsupported by evidence of Plaintiff's normal gait, as well as examinations showing no gait or other musculoskeletal abnormalities.  (R. at 19 (citing R. at 1500–1501, 1563, 1710, 1717, 1725, 1734)).  He also noted that Plaintiff was able to walk without ambulatory aids during the consultative physical evaluation.  (R. at 32–33 (citing R. at 1480)).  In fact, the examiner noted, "I do not know if his effort is not good, but he has weakness on toes on the right side, both flexor and extensor, compared to the left side."  (*Id.*).  The ALJ's findings here are thus supported by substantial evidence.

---

[1] The new regulation, SSR 24-2p, applies only to applications filed on or after June 22, 2024.  *Beal v. Comm'r of Soc. Sec.*, No. 4:25-CV-00647, 2026 WL 318985, at *14 (N.D. Ohio Feb. 6, 2026), *report and recommendation adopted sub nom. Alesha Nicole Beal, v. Commissioner of Social Security.*, No. 4:25-CV-647, 2026 WL 586993 (N.D. Ohio Mar. 2, 2026).  Because Plaintiff filed his application (and the ALJ rendered his decision) before the relevant date (R. at 36), the Court evaluates Plaintiff's claim under the old rule.

As part of Plaintiff's light work limitations, the ALJ then relied on the opinions of two administrative medical reviewers, Abraham Mikalov and Steve McKee, to find that Plaintiff should be limited to light exertion.  The reviewers each found that Plaintiff has been capable of light exertion with occasional pushing/pulling of the right lower extremity, frequent balancing, occasional stooping, kneeling, crouching, crawling, and climbing of ramps and stairs but no climbing of ladders, ropes, or scaffolds, and no exposure to hazards (R. at 78–80, 89–90, 99–100, 110–111).  The ALJ found these opinions to be supported and consistent with the record, and he adopted these findings with additional limitations.  (R. at 31–32).  Again, the ALJ supported his conclusion with substantial evidence, including explicit reference to evidence at the hearing level.  (R. at 31 (citing, *e.g.*, R. at 1708–1721, 1724–30, 1732–38)).

Next, the ALJ made a factual finding of the mental and physical limitations required by Plaintiff's former work.  Plaintiff worked as a material handler, "loading and unloading trucks at a plant nursery from 2011 to 2014, nine hours per day, six days per week."  (R. at 34 (citing R. at 254)).  On the basis of the VE's testimony, the ALJ found Plaintiff performed his prior work at the "light, . . . unskilled, SVP 2 level." (*Id.* (citing R. at 64)).

Finally, the ALJ compared the RFC to the mental and physical demands of the handler job and found that Plaintiff could perform this work as actually performed.  (*Id.*).  To support this finding, the ALJ turned to testimony from the VE, who provided this same conclusion.  (R. at 34 (citing R. at 65)).  VE testimony constitutes substantial evidence of a Step Four finding "where the testimony is elicited in response to a hypothetical question that accurately sets forth the plaintiff's physical and mental impairments." *Smith v. Halter*, 307 F.3d 377, 378 (6th Cir. 2001).  Such is the case here.  (R. at 34 (citing R. at 65).  Specifically, the ALJ propounded that this hypothetical individual could do the following:

16

> [L]ift and carry up to 20 pounds occasionally and 10 pounds frequently, can stand and walk for up to six hours and sit for up to six hours in an eight hour [period], can frequently balance as defined by the SCO, can frequently operate foot controls with the right lower extremity, can never climb ladders, ropes or scaffolding, and would need to avoid all exposure to moving mechanical parts of equipment, tools, or machinery, unprotected heights and commercial driving. This individual can have occasional superficial contact with coworkers and supervisors, but no teamwork or tandem tasks *** They should have no contact with the public as part of their job duties. They can tolerate occasional changes in an otherwise routine work setting, explained in advance to allow time for adjustments to new expectations and should have no already access to alcohol given the restrictions.

(R. at 64–65).  The ALJ elicited this testimony with a hypothetical that "accurately set forth [Plaintiff's] physical and mental impairments, as the ALJ reasonably found them." *Armington v. Kijakazi*, No. 1:20-CV-01588-CEH, 2021 WL 3633479, at *16 (N.D. Ohio Aug. 16, 2021).  By relying on the expert's response, the ALJ supported his finding with substantial evidence. *Smith*, 307 F.3d at 378.  The Court finds no error.

In response, Plaintiff alleges that the light exertion finding was not supported by substantial evidence because other evidence in the record supports the opposite conclusion.  (Doc. 12 at 13–15).  Essentially, Plaintiff wishes "the ALJ had interpreted the evidence differently." *Glasgow v. Comm'r of Soc. Sec.*, No. 2:15-CV-1831, 2016 WL 2935666, at *7 (S.D. Ohio May 20, 2016), *report and recommendation adopted*, No. 2:15-CV-01831, 2016 WL 4486936 (S.D. Ohio Aug. 26, 2016), *aff'd*, 690 F. App'x 385 (6th Cir. 2017).  But the law prohibits the Court from reweighing the evidence and substituting its judgment for that of the ALJ. *See Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011) (citing *Youghiogheny & Ohio Coal Co. v. Webb*, 49 F.3d 244, 246 (6th Cir. 1995)) ("This court reviews the entire administrative record, but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ.").  Because the ALJ supported his Step Four findings with substantial evidence, there is no error.

2.      *Step Five*

Plaintiff next argues that the ALJ erred at Step Five.  (Doc. 12 at 15).  If the ALJ finds in Step Four that a claimant cannot perform any relevant past work, the question then becomes whether the claimant is capable of performing any other work given the RFC.  20 C.F.R. §§ 404.1520(g) and 416.920(g).  To answer this question, the burden shifts to the Commissioner to demonstrate that other work exists in significant numbers in the national economy that the claimant can perform given the RFC.  20 C.F.R. §§ 404.1512, 404.1560(c), 416.912 and 416.960(c).  To meet this burden, the ALJ must make a finding supported by substantial evidence that the claimant had the vocational qualifications to perform a specific job.  *See Varley v. Sec'y of Health and Human Services*, 820 F.2d 777, 779 (6th Cir. 1987).

Though the Court found that the ALJ did not err at Step Four, the Court nevertheless provides a brief analysis of the ALJ's alternative Step Five finding.  Here, the ALJ made the alternative finding that Plaintiff can still perform additional jobs in the national economy despite his exertional limitations.  (R. at 35).  This finding is likewise supported by substantial evidence.  Like in Step Four, VE testimony constitutes substantial evidence of a Step Five finding, so long as it is "given in response to a hypothetical question that accurately describes the plaintiff in all significant, relevant respects."  *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994).  Such is the case here.

First, the ALJ focused a hypothetical to the VE that was consistent with the ALJ's RFC finding, as quoted above.  (R. at 35 (citing R. at 65)).  In response to that same hypothetical, the VE testified that light, unskilled jobs existed in the national economy, including a Housekeeping Cleaner, Folder, or Packager.  (*Id.* (citing R. at 65)).  Then, the ALJ posed the same hypothetical to the VE, but imposed sedentary exertional limitations instead of light exertion.  (*Id.*).  To this,

18

the VE testified that jobs still existed in the national economy, and that those jobs included Inspector, Sorter, and Document Preparer.  (R. at 66).  Because the hypotheticals accurately describe Plaintiff "in all significant respects," *Felisky*, 35 F.3d at 1036, the ALJ did not err by relying on the VE's testimony here.

Plaintiff contends that the ALJ improperly reached conclusions because he ignored the VE's later testimony.  Specifically, Plaintiff believes that, in finding Plaintiff would be off task for less than 10 percent of the workday, the ALJ ignored testimony from the VE that "restroom breaks would take a person off task more than 10% of a workday, they could not maintain employment." (Doc. 12 at 15 (citing R. at 68)).  And, Plaintiff says, in failing to include accommodations for Plaintiff's ambulatory aids, the ALJ ignored testimony that using crutches in a workplace would require an accommodation.  (*Id.*)  While the ALJ may base his RFC findings on testimony from the VE, he does not have to.  *Jeffery S. v. Comm'r of Soc. Sec.*, No. 6:24-CV-106-CHB, 2025 WL 2396570, at *9 (E.D. Ky. Aug. 18, 2025) ("[T]he ALJ is not required to incorporate the Vocational Expert's answers to hypothetical questions posed during the hearing.").  Even so, the ALJ adequately addressed some of this testimony by finding that Plaintiff "would need indoor work only with ready access to a restroom but would be off-task less than 10 percent of the workday." (R. at 23).  And again, substantial evidence supports the ALJ's Step Five findings.

Accordingly, Plaintiff's contention of error is without merit.

### C.  Evaluation of Medical Source Opinion

In his final contention of error, Plaintiff argues the ALJ failed to evaluate a medical opinion for supportability and consistency.  A claimant's RFC assessment must be based on all the relevant evidence in her or her case file.  *Id.*  The governing regulations describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4)

19

evidence from nonmedical sources, and (5) prior administrative medical findings.[2] 20 C.F.R. § 404.1513(a)(1)–(5). Regarding two of these categories—medical opinions and prior administrative findings—an ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from [Plaintiff]'s medical sources." 20 C.F.R. § 404.1520c(a). Instead, an ALJ must use the following factors when considering medical opinions or administrative findings: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with [Plaintiff]"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability programs policies and evidentiary requirements." 20 C.F.R. § 404.1520c(c)(1)–(5). Although there are five factors, supportability and consistency are the most important, and the ALJ must explain how they were considered. 20 C.F.R. § 404.1520c(b)(2).

When evaluating supportability, the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support the medical opinion, the more persuasive the ALJ should find the medical opinion. 20 C.F.R. § 416.920c(c)(1). When evaluating consistency, the more consistent a medical opinion is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the ALJ should find the medical opinion. 20 C.F.R. § 404.1520c(c)(2). And although an ALJ may discuss how he or she evaluated the other factors, he or she is not generally required to do so. *Id*. If, however, an ALJ

---

[2] The regulations define prior administrative findings:

> A prior administrative finding is a finding, other than the ultimate determination about whether you are disabled, about a medical issue made by our Federal and State agency medical and psychological consultants at a prior level of review (see § 416.1400) in your current claim based on their review of the evidence in your case record . . . .

20 C.F.R. § 404.1513(a)(2), (5).

"find[s] that two or more medical opinions or prior administrative findings about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same, [the ALJ will] articulate how [he or she] considered the other most persuasive factors . . . ." 20 C.F.R. § 404.1520c(b)(3).

At bottom, the role of the ALJ is to articulate how he considered medical opinions and how persuasive he found the medical opinions to be. *Holston v. Saul*, No. 1:20-CV-1001, 2021 WL 1877173, at *11 (N.D. Ohio Apr. 20, 2021), *report and recommendation adopted*, No. 1:20 CV 1001, 2021 WL 1863256 (N.D. Ohio May 10, 2021).  The role of the Court is not to reweigh the evidence but to make sure the ALJ considered the proper factors and supported his conclusion with substantial evidence. *Id.* at *14.

Plaintiff contends that the ALJ improperly evaluated the opinion of his treatment provider, Huong-Thao Thy Tran, M.D.  (Doc. 12 at 16–18).  He argues that the ALJ erred as he failed to support his conclusion and failed to provide any evidence which was consistent with his determination. (*Id.*).

Dr. Tran completed an assessment in February 2024.  She based her assessment on Plaintiff's diagnoses of chronic diarrhea, IBS, osteopenia, anxiety, depression, alcoholism, chronic hip and ankle and rib pain, GERD, and sinusitis.  Dr. Tran listed Plaintiff's clinical findings of weight loss, cachexia, antalgic gait, limping, and anxiety.  Dr. Tran concluded that Plaintiff could sit for 10 minutes at a time, less than 2 hours in a workday, and stand/walk 10 minutes at a time, less than 2 hours in a workday.  He would need an unscheduled break every hour for 15 minutes. He could rarely lift less than 10 pounds and had problems reaching.  He would miss more than 4 days of work per month.  (R. at 1686–89).

In evaluating Dr. Tran's opinion, the ALJ determined:

21

The [ALJ] finds Dr. Tran's opinion to be unpersuasive because it is not well supported by her own treatment notes ( (Exs. 1F/10-18, 32-37, 42-53, 65-71, 87-121; 7F/15-22, 25-31; 9F/10- 16; 13F/10-23, 26-32, 34-40). His skin turned pale with stretching on an exam in December 2019, and his right knuckles had mild purplish discoloration with normal range of motion (Ex. 1F/119). In May 2020, [Plaintiff] had mild tenderness to palpation in the right rib but was able to twist and bear weight without difficulty (Ex. 1F/109). He had pain in the right lower extremity and pelvic pain with an antalgic gait in September 2022 but was still able to walk (Ex. 7F/27). In December 2023, he had right hip pain, minimal right ankle pain, tenderness at the mid and low back with no sciatica, and abdominal tenderness with no guarding or rebound tenderness (Ex. 13F/19). However, Dr. Tran's treatment notes generally reveal normal physical exams (Exs. 1F/12, 33-34, 49-50, 67, 89, 93-94, 98-99, 104-105, 109; 7F/18; 9F/11; 13F/12, 27, 36)

Dr. Tran's opinion is also not consistent with the other medical evidence of record revealing generally routine conservative treatment except for the ORIF of the right ankle in January 2021 (Ex. 1F/79-80). However, [Plaintiff] last saw orthopedic surgery in September 2021, when his ankle mortis was only mildly swollen without tenderness to palpation. His motor function was intact in the EHL/FHL as well as dorsiflexion/plantarflexion. He was referred to physical therapy (Ex. 1F/29-30). He returned to physical therapy but only attended three sessions after the initial evaluation. He cancelled five appointments and did not show to one scheduled appointment. He was subsequently discharged from physical therapy (Ex. 1F/18-19).

(R. at 32).

### 1. *Supportability*

Plaintiff begins by arguing the ALJ failed to evaluate Dr. Tran's opinion for supportability. (Doc. 12 at 17).

Supportability requires the ALJ to evaluate how much the medical conclusions are supported internally, as well as by other treatment notes and exams by the evaluating medical provider. 20 CFR § 404.1520c(c)(1); *Michael R. v. Comm'r of Soc. Sec.*, No. 2:22-CV-4117, 2023 WL 6160626, at *5 (S.D. Ohio Sept. 21, 2023) ("The ALJ properly evaluated the supportability of Ms. Riffle's opinion given the lack of objective evidence in the opinion itself and when compared to Ms. Riffle's past treatment notes."), *report and recommendation adopted*, No.

2:22-CV-4117 WL 688754 (S.D. Ohio Feb. 20, 2024); *see also Thomas J. v. Comm'r of Soc. Sec.*, No. 1:24-CV-00048, 2024 WL 3841221, at *10 (S.D. Ohio Aug. 15, 2024).  The ALJ did that.

First, the ALJ found internal inconsistencies within Dr. Tran's treatment notes.  (R. at 32). For example, the ALJ recognized that Plaintiff's skin turned pale with stretching and that he had mild discoloration in his right knuckles; but the same notes also showed that Plaintiff had a normal range of motion (*id.* (citing R. at 452)).  The ALJ then discussed that Plaintiff exhibited mild tenderness to palpation in the right rib but was also able to twist and bear weight without difficulty. (*Id.* (citing R. at 442)).  In September 2022, said the ALJ, Plaintiff had lower extremity and pelvic pain with an antalgic gait, but was still able to walk.  (*Id.* (citing R. at 1515)).  Then, the ALJ noted that by December 2023, Plaintiff showed minimal pain in the right hip and ankle, as well as tenderness in the mid- and low-back areas with no sciatica, and abdominal tenderness but with no guarding or rebound tenderness.  (*Id.* (citing R. at 1717)).  Looking to the inconsistencies among and within treatment notes, the ALJ conducted the supportability analysis contemplated by the regulations.  *Michael R.*, 2023 WL 6160626, at *5.

Then, the ALJ zoomed out.  In addition to the internal inconsistencies, the ALJ found that the treatment notes themselves failed to offer support for Dr. Tran's opinion: "Dr. Tran's treatment notes generally reveal normal physical exams."  (*Id.* (citing R. at 345, 366–67, 382, 400, 422, 426–27, 431–32, 437–438, 442, 1506, 1563, 1710, 1725, 1734)).  Indeed, these records revealed normal and unremarkable findings in Dr. Tran's musculoskeletal, gastrointestinal, and psychiatric examinations of Plaintiff.  (R. at 345, 366–67, 382, 400, 422, 426–27, 431–32, 437–438, 442, 1506, 1563, 1710, 1725–26, 1734)).  The ALJ again analyzed supportability here, and his conclusion is supported by substantial evidence.  (*Id.*).

23

Plaintiff nevertheless argues that the ALJ failed to evaluate supportability because some treatment notes do support Dr. Tran's opinions. (Doc. 12 at 17). Among other records, Plaintiff cites treatment notes that say he was "positive for arthralgias, joint swelling, and decreased concentration." (*Id.* (citing R. at 1563)). He also points to December 2023 treatment notes which showed Plaintiff had abdominal and musculoskeletal tenderness, right ankle pain, and depressed mood. (*Id.* (citing R. at 1691–92)). And in February 2024, says Plaintiff, Dr. Tran noted he had trouble balancing due to his IBS, had multiple fractures, and reported pain. (*Id.* (citing R. at 1709)). Plaintiff essentially asks the Court to usurp the role of the ALJ by finding support for Dr. Tran's opinions within her treatment notes. The mere existence of supportive treatment notes does not negate the ALJ's well-reasoned determination that other notes were unsupportive. *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) ("The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion."); *See Denise Janine A. v. Comm'r of Soc. Sec.*, No. 2:22-CV-04167, 2023 WL 6939250, at *7 (S.D. Ohio Oct. 20, 2023) ("All told, the ALJ's RFC determination has substantial support; Plaintiff just disagrees with it."). At base, whether Dr. Tran's treatment notes adequately support her medical conclusions is a question explicitly reserved for the ALJ. The role of this Court is to determine whether the ALJ provided an answer for that question and showed his work. *See Holston*, 2021 WL 1877173, at *14. The ALJ's opinion demonstrates that he did.

Plaintiff then claims the ALJ "failed to support his conclusion and failed to provide any evidence which was consistent with his determination." (Doc. 12 at 17–18). Because of this, Plaintiff argues the ALJ "failed to build an accurate and logical bridge from the evidence to the conclusions in the RFC." (*Id.* at 18). But as discussed above, this is not so. Not only did the ALJ provide exact citations for the internal inconsistencies, but he also discussed them in detail. And

24

the Court can easily follow his reasoning here.  Further, that reasoning is supported by substantial evidence, as previously mentioned.

In sum, the ALJ did not err, and the Court declines to disturb his supportability analysis.

>   2.   *Consistency*

Next, Plaintiff argues that the ALJ failed to evaluate Dr. Tran's opinion for consistency. (Doc. 12 at 18).  Again, the Court disagrees.

Unlike supportability, which requires the ALJ to compare medical conclusions to the evidence offered by the reporting physician herself, consistency requires the ALJ to compare the report's conclusions to the evidence offered in other sources in the record.  20 C.F.R. § 404.1520c(c)(2); *see also David W. v. Comm'r of Soc. Sec.*, No. 3:24-CV-00255, 2025 WL 841074, at *7 (S.D. Ohio Mar. 18, 2025) ("[T]he ALJ clearly evaluated the consistency of Dr. Swedberg's opinion by comparing his findings to other medical evidence and Plaintiff's subjective accounts of his symptoms.  That is all the ALJ had to do.").

In clear language, the ALJ made explicit comparison of Dr. Tran's limitations to the record. The ALJ first found Dr. Tran's opinion was inconsistent with evidence that revealed "generally conservative treatment except for the [open reduction and internal fixation] of the right ankle in January 2021."  (R. at 32 (citing R. at 412–13)).  Then, the ALJ found the opinion inconsistent with records that showed Plaintiff's condition improved in the time after his surgery.  For instance, the ALJ noted that the last time Plaintiff saw an orthopedic surgeon was in September 2021, where he presented only mild swelling of his ankle mortis, had no tenderness to palpation, and had intact motor function.  (*Id.* (citing R. at 362–63)).  In comparing the opinion to Plaintiff's conservative treatment—as well as records that showed he improved after more serious treatment—the ALJ evaluated Dr. Tran's opinion for consistency.  *Alicia B. v. Comm'r of Soc. Sec.*, No. CV 25-10627,

2026 WL 575332, at *5 (E.D. Mich. Mar. 2, 2026) (holding the ALJ conducted an adequate consistency analysis when he compared the opinion to the conservative level of treatment received); *Swartz v. Comm'r of Soc. Sec.*, No. 3:24-CV-02196-DAC, 2025 WL 2676562, at *9 (N.D. Ohio Sept. 18, 2025) ("[T]he ALJ applied the consistency factor by explaining the opinion was inconsistent with Ms. Swartz's psychiatric notes which 'indicate that her medications ha[ve] been effective in reducing her mental health symptoms' and the findings of her mental-status examinations.").

Finally, the ALJ compared the opinion to Plaintiff's noncompliance with physical therapy, demonstrating that Plaintiff's condition required less serious accommodations than Dr. Tran recommended.  Once Plaintiff was referred to physical therapy, said the ALJ, Plaintiff  attended only three sessions after the initial evaluation, he cancelled five appointments, and he did not show up to one appointment.  (*Id.* (citing R. at 352)).  Because of this, he was ultimately discharged from physical therapy.  (*Id.* (citing R. at 351–52)).  In making these direct comparisons, the ALJ sufficiently analyzed Dr. Tran's opinion for consistency.  *David W.*, 2025 WL 841074, at *7.

Again, Plaintiff disapproves of this analysis because he says the ALJ did not provide enough explanation to create a logical bridge between the evidence he cites and the conclusions he draws. (Doc. 12 at 18).  As demonstrated above, the ALJ provided enough explanation for the Court to trace his reasoning from start to finish: the ALJ found Dr. Tran's proposed limitations were inconsistent with Plaintiff's conservative treatment, his demonstrated improvement in his ankle after surgery, and his unwillingness to continue with physical therapy.  The Court has no trouble connecting these dots.  Therefore, the ALJ built a sufficient logical bridge.  *Bryson v. Comm'r of Soc. Sec.*, No. 3:20-CV-667-CHB, 2022 WL 945318, at *3 (W.D. Ky. Mar. 29, 2022) ("[T]he ALJ need only say enough to permit an appellate court to 'trace the path' of the

26

reasoning.") (quoting *Stacey v. Comm'r of Soc. Sec.*, 451 F. App'x 517, 519 (6th Cir. 2011)).

Plaintiff also contends that the ALJ "failed to consider the totality of the medical records." (Doc. 12 at 18).  Plaintiff does not elaborate further, but his argument falls short for two reasons. First, the ALJ need not "discuss every piece of evidence nor highlight every inconsistency." *Steiner v. Comm'r of Soc. Sec.*, No. 3:21-CV-00074, 2022 WL 2610492, at *10 (N.D. Ohio May 18, 2022), *report and recommendation adopted*, No. 3:21-CV-00074, 2022 WL 16945694 (N.D. Ohio Nov. 15, 2022); *Bryson*, 2022 WL 945318, at *3 ("[A]n ALJ is not required to provide a written evaluation of every piece of evidence in his opinion.").  Rather, the ALJ must say enough to allow the Court to trace his reasoning.  *Id.*  As demonstrated above, this is exactly what the ALJ did.

Second, Plaintiff's statement implies that the ALJ erred because he failed to consider records that Plaintiff believes are consistent with Dr. Tran's opinions.  But the Court again declines to remand where other evidence may support a conclusion opposite the one formed by the ALJ. As discussed, the ALJ's reasoning is clear, easy to follow, and supported by substantial evidence. The Court finds no error.

## IV.     CONCLUSION

Based on the foregoing, it is **ORDERED** that Plaintiff's Statement of Errors (Doc. 12) is **OVERRULED** and that judgment be entered in favor of Defendant.

IT IS SO ORDERED.

Date: March 13, 2026                                *s/ Kimberly A. Jolson*
                                                            KIMBERLY A. JOLSON
                                                            UNITED STATES MAGISTRATE JUDGE